[Civ. No. 1716.  Third Appellate District.—October 15, 1917.]

WINFIELD R. NASON et al., Appellants, v. HENRY FELDHUSEN et al., Respondents.

APPEAL—REVIEW OF ORDER—RECORD.—An appellate court in reviewing an order is required to confine itself in the consideration thereof to the evidence, papers, documents, etc., constituting the record upon which the order is predicated; and such evidence, papers, and documents, to be properly before the appellate court for consideration in connection with the review of such order, must be authenticated in the manner prescribed either by the rule laid down by the supreme court or by law.

ID.—ORDER CHANGING PLACE OF TRIAL—AFFIDAVIT FILED ON DAY OF HEARING NOT REVIEWABLE.—On an appeal from an order changing the place of trial of an action, an affidavit filed on the day set for oral argument of the appeal, stating that since the making of the order the principal place of business of the defendant corporation had been changed to another county, cannot be considered, for the reason that the same is not authenticated as a part of the record as required by rule 29 of the supreme court.

ID.—REMOVAL SUBSEQUENT TO ORDER CHANGING PLACE OF TRIAL—JURISDICTION NOT DEFEATED.—The jurisdiction of an action by the court of the county to which the cause had been removed cannot be defeated by the removal of one or even all the defendants from the latter county subsequently to the making of such order.

ID.—ACTION FOR CANCELLATION OF CONTRACT—PLACE OF TRIAL.—An action, the gist of which under the averments of the complaint is an alleged fraud by which the defendants induced the plaintiff to enter into a contract for the purchase of corporate stock, and the object of which is to secure a rescission of the contract, obtain an accounting, and an injunction, is a personal action which the defendants are entitled to have tried in the county in which they reside, notwithstanding it also appears from the complaint that a deed of trust on real property was given as a part of the fraudulent transaction.

ID.—JOINDER OF LOCAL AND PERSONAL ACTIONS—RIGHT OF DEFENDANT.—Where a local action is joined with a personal or transitory action, the defendants are entitled to have it tried in the county in which they reside.

APPEAL from an order of the Superior Court of San Joaquin County changing place of trial. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

L. T. Hatfield, for Appellants.

Dunn & Brand, Kleinsorge & Tuttle, and Elliott & Atkinson, for Respondents.

HART, J.—Plaintiffs appeal from an order of the superior court of San Joaquin County, in which court the action was commenced, changing the place of trial to the county of Sacramento.

It is the contention of appellants that "the purpose of the action is to bring about the rescission of a contract and secure the cancellation of a note and deed of trust given by plaintiffs, appellants, to Henry Feldhusen and A. M. Mull as trustees for California Guaranty Life and Accident Insurance Company. The real estate involved is situated in the county of San Joaquin. Appellants have at all times resided in the county of San Joaquin, and the contract was entered into there.

The position of respondents is that "the gist of the action is fraud. Such an action is a personal or transitory action and the defendants are entitled to have it tried in the county in which they or some of them reside."

In addition to the defendants above named, twenty individuals, who at different times had been directors of the defendant corporation, the Insurance Company, were joined as defendants. None of the individual defendants resided in the county of San Joaquin and the greater portion of them resided in Sacramento County. The defendants, the Insurance Company and Sacramento Bank, were corporations whose principal place of business was in the county of Sacramento.

It is alleged in the complaint, which was filed in April, 1915, that, in the month of February, 1913, and prior thereto, plaintiff, Winfield R. Nason, was the owner of 109 acres of land in San Joaquin County, against which there was outstanding a deed of trust to secure the payment of an indebtedness of five thousand three hundred dollars, owed by him to the San Joaquin Valley Bank; that, in the months of February and March, 1913, Perry Gum and E. E. Shook, acting as agents of the Insurance Company, visited the farm of plaintiffs, "and, for the purpose of inducing plaintiff, Winfield R. Nason, to subscribe to stock therein, represented to him that the corporation had a capital stock of three hundred and fifty thou-

sand dollars, substantially all of which had been subscribed for,'' the par value of the shares of said stock being one dollar, but that the intrinsic value thereof was $2.50 per share; that within a few days the corporation would apply for a license to begin business as an insurance company; that the condition of sales and subscription was such as to justify the statement that all of the capital stock would be sold within sixty days. It is then alleged that said agents assured said plaintiff "that if he would subscribe for one thousand shares of said capital stock at $2.50 per share, the dividends on such stock would amount to enough to pay off his indebtedness to the San Joaquin Valley Bank within five years . . . and that if plaintiff would make such subscription for one thousand shares of stock as aforesaid, the Insurance Company would loan him a sufficient amount of money to pay off said indebtedness to the San Joaquin Valley Bank, and pay for said one thousand shares of stock and take a deed of trust upon the property in the sum of seven thousand five hundred dollars.'' It is further alleged that said agents made statements to the effect that certain of the defendants were directors of the Insurance Company and that each of them was a stockholder to the extent of ten thousand dollars; that said plaintiff, in March, 1913, subscribed for one thousand shares of the stock of said Insurance Company at the price of $2.50 per share; that the company loaned him seven thousand five hundred dollars, of which sum five thousand three hundred dollars was paid to said San Joaquin Valley Bank, the balance being applied to the purchase price of said stock, the loan being represented by a promissory note, the payment of which was secured by a deed of trust in which defendants Feldhusen and Mull were named as trustees. Plaintiff paid interest on said loan to and including the first day of April, 1914. It is alleged that said statements of Gum and Shook relative to the status of the Insurance Company, the amount of subscriptions, etc., were false; that if it had not been for such representations said plaintiff, Winfield R. Nason, would not have subscribed for said stock.

The complaint then sets forth that, in October, 1914, plaintiffs learned that the directors of the Insurance Company had determined to abandon all attempts to engage in business and to go into liquidation, and that an arrangement had been made with defendant, Sacramento Bank, by which all assets

of the Insurance Company were delivered to said bank; that the deed of trust referred to was assigned to said bank in December, 1914. Further allegations of fraud are contained in the complaint, and it is therein stated that plaintiffs are unable to ascertain the true state of affairs with respect to the money and other assets of the Insurance Company and that no accounting has been made by its officers that is available to plaintiffs. It is then alleged "that unless restrained and enjoined from so doing, Sacramento Bank will proceed to cause the trustees under the deed of trust of plaintiffs to sell the property of plaintiffs described in said deed of trust for the purpose of discharging the indebtedness represented therein . . . and that said property will be sold and disposed of."

The prayer of the complaint is that defendants be enjoined from disbursing any of the funds of the Insurance Company; that Sacramento Bank, J. M. Henderson, Jr., A. M. Mull, and Henry Feldhusen be enjoined from taking any action for the purpose of selling the property of plaintiffs under said trust deed; that said last-named defendants be required to reconvey to plaintiffs said property "absolved from the payment of any portion of said note in excess of five thousand three hundred dollars"; that defendants be restrained from taking any action tending to the distribution of the assets of the Insurance Company, or that plaintiff receive back from the Insurance Company said sum of two thousand two hundred dollars with interest; that an accounting be rendered by the officers of the Insurance Company, that a receiver be appointed to take charge of the company's assets, and for general relief.

The court issued an order directing defendants to show cause, on May 3, 1915, why a temporary injunction should not issue as prayed for. On April 27, 1915, the following papers were filed by defendants: 1. Demurrer to the complaint; 2. Demand for change of place of trial; 3. Affidavit of merits; 4. Notice of motion for change of place of trial; 5. Notice of motion to strike out portions of the complaint. The order changing the place of trial was entered on June 7, 1915.

On October 2, 1917, the day upon which this action was set for oral argument in this court, counsel for appellants filed what is termed: "Memorandum of Suggestion of Change of Principal Place of Business of California Guaranty Life and Accident Insurance Company," in which it is stated that, since December 20, 1916, the principal place of business of said cor-

poration has been in the county of Alameda. Attached thereto is an affidavit setting forth the fact of said change of place of business.

1. The document last mentioned, even if the fact of the change of the principal place of business of the corporation defendant since the commencement of this action and the making of the order changing the place of trial could in any event properly exert any influence in the determination of the ultimate legal issue submitted by this appeal, cannot be considered by this court, for the reason that the memorandum and the affidavit therein contained are not authenticated as a part of the record in the case, as required by rule 29 of the supreme court [119 Pac. xiv]. (*Melde* v. *Reynolds,* 120 Cal. 237, [52 Pac. 491] ; *Herrlich* v. *McDonald,* 80 Cal. 472, [22 Pac. 299] ; *Von Glahn* v. *Brennan,* 81 Cal. 261, [22 Pac. 596] ; *Spreckels* v. *Spreckels,* 114 Cal. 60, [45 Pac. 1022] ; *Skinner* v. *Horn,* 144 Cal. 279, [77 Pac. 904] ; *Manuel* v. *Flynn,* 5 Cal. App. 319, 328, [90 Pac. 463].)

2. Section 392 of the Code of Civil Procedure provides that actions for the recovery of real property, or of an estate or interest therein, or for the determination, in any form, of such right or interest, and for injuries to real property, must be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial, "as provided in this code."

Section 393 of said code provides that other specifically designated actions shall be tried in the county in which the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial.

Section 394, among other things, provides that an action or a proceeding against a county or city, or a city and county, may be commenced and tried in such county, or city and county, unless such action or proceeding is brought by a county, or city and county, in which case it may be tried in any county, or city and county, not a party thereto.

Section 395 reads, in part, as follows: "In all other cases, the action must be tried in the county in which the defendants, or some of them, reside at the commencement of the action, or if it be an action for injury to person, or property, or for death from wrongful act, or negligence, in the county where the injury occurs, or the injury causing death occurs, or in the county in which the defendants, or some of them, reside at the commencement of the action."

The learned counsel for the appellants contends and in his brief declares: "If it is not a case in which parties are authorized to repudiate the transaction on the ground of fraud and failure of consideration, then of course it does not state facts sufficient to constitute a cause of action, but if it does state facts sufficient to constitute a cause of action, then, in the opinion of counsel for appellants, the action should be tried in the county of San Joaquin, for the reason that the whole basis of the action is to relieve real estate situated in San Joaquin County from a lien that was procured through fraud, and is a direct proceeding to eliminate that lien. If it is a proper case for the cancellation of a lien procured by fraud, we feel justified in asking this court to reverse the order changing the place of trial to the end that it may be tried in the county in which the real estate is located, and where the fraud was perpetrated."

It is very clear to our minds that the learned counsel thus falls into error as to the theory or main object of the action as made by his pleading. It is quite obvious that the main object of the action, under the averments of the complaint, is not to remove a lien procured by alleged fraud upon the real estate referred to. The gist of the action, as it is stated in the complaint, lies in the alleged fraud by which the defendants induced the plaintiff to enter into the contract for the purchase of a certain number of shares of the corporation's stock, and its object is to secure a rescission of that contract. If this be not true, then the complaint states no cause of action at all. It is true that it is alleged that the trust deed to the land referred to was procured by fraud and as a part of the alleged fraudulent transaction, but the effect of the allegations in that particular can go no further than to disclose one of the incidental results flowing from the alleged fraudulently procured contract for the sale and purchase of the stock. The complaint, as suggested, states no cause of action for a rescission of the deed of trust, but, to the contrary, itself discloses by its averments that a rescission or cancellation of that instrument cannot be had; for, conceding that the contract for the sale and purchase of the stock was procured and brought about through fraud, the complaint shows that the plaintiffs are indebted to the corporation in the sum of five thousand three hundred dollars, secured by the trust deed mentioned in the complaint, and that said sum was loaned by

the corporation to the plaintiffs to enable them to lift a mortgage upon the land held by the San Joaquin Valley Bank as security for a loan in a like sum, that they did so extinguish their obligation and mortgage to the bank with the money so obtained, and that the corporation has not been repaid that money. Whatever might have been the character of the general transaction between the corporation and the plaintiff resulting in the execution of the trust deed—even if characterized to some extent by fraud on the part of the corporation— no court would be authorized to cancel the deed so long as the debt, to secure the payment of which said deed was given, remained unpaid, there being no allegation or claim that the debt thus secured is not an honest and just one.

As before stated, the only question which may be adjudicated herein, under the averments of the complaint, is whether, because the sale to the plaintiffs of the stock in the corporation was consummated through the misrepresentation and fraud of the latter or its agents, the plaintiffs are entitled to have said contract set aside and thus be entitled to a cancellation of their indebtedness to the corporation in the sum paid by them for the stock. And, assuming that the plaintiffs are entitled, under the averments of their complaint, or in this action, to an accounting to determine the amount due on the indebtedness secured by the trust deed, still the action is no less one *in personam*. An action for an accounting is an equitable proceeding and is a personal action; so is an action for an injunction, and in this case, the averments and prayer for both an accounting and an injunction restraining the trustees from selling the property under the trust deed involve relief merely incidental to the principal object of the action, viz., to declare the sale of the stock void and set it aside on the ground that it was brought about by the fraud of the vendor.

But, even if it were necessary to concede that the object of the action was partly to recover real property or for the determination of a right or interest therein, the right of the defendants herein to have the action tried in the county of their residence cannot, under the averments of the complaint, be gainsaid; for, as a general rule, where a local action is joined with a personal or transitory action, the defendant is entitled to have it tried in the county in which he resides. (*Le Breton* v. *Superior Court*, 66 Cal. 27, 29, [4 Pac. 777] ; *Smith* v. *Smith*, 88 Cal. 572, [26 Pac. 356].) In the latter case, the

court says: ''When, however, the subject matter of the action is local, and the judgment which is sought is to operate directly upon the subject matter, it is provided that the action shall be tried in the county where the subject matter of the action is situated. The plaintiff cannot, by writing in his complaint matters which form the subject of a personal action with matters which form the subject of a local action, compel the defendant to have both those matters tried in a county other than that in which he resides. It is only when real estate alone is the subject matter of the action that the provisions of section 392 can be invoked against a defendant who resides in a county different from that in which the land is situated. If, in his complaint, the plaintiff join with such a cause of action another which is not embraced in its provisions, or if he also seeks a remedy against the defendant upon matters which are not embraced within the provisions of this section, his action becomes one of those 'other cases' provided for in section 395, which the defendant is entitled to have tried in the county of his residence.''

As we have shown, and as is clearly so upon the facts as pleaded in the complaint, the judgment herein sought cannot operate upon the land which is the subject of the deed of trust, nor even upon the deed of trust itself. No decree affecting either would come within the scope of the action as made by the complaint.

Our conclusion is that the action is purely transitory and that, since at the time of the commencement of the action the defendants resided in Sacramento County, the principal place of business of the corporation being then also in said county, the order appealed from was legally and properly made. It is accordingly affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 15, 1917, and the following opinion then rendered thereon:

THE COURT.—The appellants ask for a rehearing of this cause and in their petition cite the case of *Pilstrand* v. *Greenamyre, post*, p. 799, [168 Pac. 1161], as authority for their position that the affidavit filed in this case while it was pending in this court on appeal, setting forth that the corpora-

tion defendant, after the order made by the court below changing the place of trial of this action from San Joaquin to Sacramento County, had changed its principal place of business from Sacramento County to Alameda County, may be considered by this court in determining whether the court below was warranted in ordering a change of the venue of the action. The case named was an action for the foreclosure of a mechanic's lien subsisting upon a building which was erected by the appellant, Greenamyre, upon land of which he held possession under an agreement of sale with the owner. While said case was pending on appeal and undisposed of, the building upon which subsisted the lien therein sought to be foreclosed was destroyed by fire. This fact was called to the attention of this court in the brief of respondent and was not denied by the appellant, and the former insisted that the question before us had become moot and asked for a dismissal of the appeal. The question whether a mechanic's lien fully perfected upon the completion of the building survived the destruction of the building and continued thereafter on so much of the land as was found necessary to the convenient use and occupation of the building was discussed in the opinion in that case, but it was entirely *obiter* and advanced merely as a guide to the court below in the event of another trial of the case. In other words, the fact, if it was a fact, that the building had been destroyed after the cause had been tried and an appeal taken therein was not considered as established, but upon the hypothesis that such was the fact and that it would enter as an issue into the case upon a retrial thereof, we ventured our view of the law as applied to such a situation. We may add that the judgment in that case was reversed because, while there was no evidence disclosed by the record that supported a personal judgment against Greenamyre, a joint personal judgment was nevertheless rendered and entered against both Greenamyre and his codefendant, Stivers. So much, then, for the case relied upon by the appellants herein upon the point above suggested. It is obviously no authority supporting the position of appellants here. Nor would it be in our opinion even if it were true that this court had dismissed the appeal upon satisfactory proof that, for any reason, the question submitted for decision therein had become moot, there being no analogy between such a proceeding and the proposition contended for here.

We may well repeat here the very obvious proposition briefly stated in the original opinion, viz.: That an appellate court, in reviewing an order such as the one from which this appeal is prosecuted, is required to confine itself in the consideration thereof to the evidence, papers, documents, etc., constituting the record upon which the order is predicated; and such evidence, papers, and documents, to be properly before the appellate court for consideration in connection with the review of such order, must be authenticated in the manner prescribed either by the rule laid down by the supreme court or by law. (See Rule 29, Supreme Court.) The obvious purpose of the authentication so required is to show upon what evidence or papers the court below made its order, and thus enable the reviewing court to determine whether, upon the record as made before it, the court below was legally authorized to make the order complained of. It is plainly manifest that in no case in which the appellate jurisdiction of the appellate courts of this state is invoked can the record submitted for review be made in said courts, and this would certainly be the result in this case were we required to hold that the affidavit referred to might be considered on this appeal.

But still another answer may be made to the proposition urged by counsel, and that is that jurisdiction of said action by the court of the county to which the cause has been removed cannot be defeated by the removal of one or even all the defendants from the latter county subsequently to the making of such order.

Appellants also insist that we reached an erroneous conclusion on the general proposition involved in the appeal, but we have sufficiently expressed our views thereon in the former opinion, and from the views so expressed, and the conclusion following therefrom, we see no reason for receding.

The petition for a rehearing is denied.